**Edith BAZILE, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of the Social Security Administration, Defendant.**

**No. CIV. A. 99–11643–WGY.**

United States District Court,
D. Massachusetts.

Sept. 20, 2000.

Nancy J. Lorenz, Greater Boston Legal Services, Taramattie Doucette, Greater Boston Legal Services, Boston, MA, for Edith Bazile, Plaintiffs.

David S. Mackey, Michael J. Pineault, United States Attorney's Office, Peter K. Levitt, United States Courthouse, Assistant U.S. Attorney, Boston, MA, for Kenneth S. Apfel, Defendants.

## MEMORANDUM OF DECISION

WILLIAM G. YOUNG, Chief Judge.

This is an action under sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3). The plaintiff, Edith Bazile ("Bazile"), seeks judicial review of a final decision, dated February 23, 2000, of Kenneth S. Apfel, the Commissioner of the Social Security Administration ("the Commissioner") denying her applications for Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) benefits. Bazile asks the Court to vacate the Commissioner's decision and remand the matter for further consideration by an administrative law judge. She argues that the Commissioner's decision is not supported by substantial evidence because the Commissioner misapplied the standard for evaluating Bazile's subjective complaints of pain and made an improper credibility determination. *See* Prelim. Statement ¶ 11.

## I. BACKGROUND

### A. Factual Background

Bazile was born in Haiti on November 15, 1954, and was a high school graduate when she moved to the United States in 1974. (Tr. of Oral Hearing 8/24/95 at 23–

25.)[1] She worked as a keypunch operator for Safety Insurance Company from 1984 to 1991. (Tr. at 25–26, 78.) On October 18, 1989, Bazile fell while ascending an escalator in a Boston subway station. (Tr. at 29–31.) She broke a bone in her foot, injured her lower back, and cut her forehead. (Tr. at 94–97.) She returned to work, but was frequently absent, complaining of chronic low-back pain, knee pain, headaches, and dizziness. (Tr. at 39–40.) Bazile's employer fired her on August 5, 1991, 22 months after her accident. (Tr. at 26.) Bazile asserts that her frequent, pain-related absences caused her dismissal, (Tr. at 26), and that the day she lost her job marked the onset of her disability. (Tr. at 74.)

### B. Medical Evidence

After her accident, Bazile had lower back pain. She underwent physical therapy at Massachusetts General Hospital from January through April 1990. (Tr. at 129–34.) In January 1991 through March 1991, while still employed, she was examined by Dr. Ruben Oganesov, a physical medicine specialist at the Medical Center of Greater Mattapan, who concluded that Bazile's back injury limited her range of motion to ten degrees in all directions and rendered her partially disabled through March 1991. (Tr. at 164, 169.) In July, 1991, Bazile sought treatment for her pain at New England Medical Center, where doctors diagnosed her as having degenerative disc disease. (Tr. at 135–37.) In a follow-up visit in October 1991, x-rays confirmed that Bazile had narrowing of L5–S1 disc space, and a doctor referred her to PRIDE Braintree based on her continued complaints of pain. (Tr. at 139.) There, Bazile was evaluated by Dr. James Rainville, who diagnosed Bazile as having chronic lumbar pain syndrome, significant pain inhibition of movement, probable moderate deconditioning, and pain-related adjustment disorder. (Tr. at 146–48.) Dr. Rainville noted the presence of "Waddell signs of superficial tenderness, distraction SLR and over-reaction." (Tr. at 147.) He stated that he was "most impressed with the extreme amount of distress Ms. Bazile expresses because of her pain symptoms," which "has obviously interfered with ... the ability to work." (Tr. at 148.) He referred Bazile for physical and occupational therapy, a counseling consultation, and further functional evaluation. (Tr. at 148.) Bazile failed to act on the referrals, stating that she lacked insurance. *See* Pl.'s Mem. at 4. From January 16, 1992, through August 5, 1994, Bazile was treated by Dr. Harold Goodman, an orthopedic surgeon in Quincy. (Tr. at 151–56.) After initially diagnosing Bazile with low back strain, (Tr. at 151), Dr. Goodman concluded in January 1994 that she had a herniated disc, chronic synovitis, and early posttraumatic arthritis of the right ankle and knee. (Tr. at 153–54.) He also noted that "she is ambulatory only with a cane and then only with considerable difficulty." (Tr. at 154.) In August 1994, he noted that Bazile had "about half the normal range of motion," and opined that Bazile "cannot do work involving heavy or strenuous lifting and no constant uninterrupted sitting." (Tr. at 156.)

### C. Administrative Proceedings

Bazile filed an application for SSDI and SSI benefits on December 1, 1993, alleging disability as of August 5, 1991, due to back pain, knee pain, and migraine headaches. (Tr. at 15, 55–57, 74.) The Commissioner initially denied Bazile's claim, and upon reconsideration denied it again. (Tr. at 60–63.) At Bazile's request, an administrative law judge heard the case on August 24, 1995. (Tr. at 15.) After *de novo* review of the evidence, the administrative law judge, in a decision dated October 11, 1995, found that Bazile was not disabled within the meaning of the Social Security Act. (Tr. at 15–18.) Specifically, the administrative law judge found that Bazile had "the residual functional capacity to

---

**1.** All Transcripts of Oral hearing will be referred to as Tr. at ___.

perform a full range of at least sedentary work, lifting up to 10 pounds occasionally with occasional standing and walking." (Tr. at 17.)

The evaluation of the administrative law judge stopped at the fourth step of the five-step sequential evaluation process described in the Social Security Regulations (the "Regulations"), 20 C.F.R. §§ 404.1520, 416.920, concluding that Bazile's impairment did not prevent her from doing "past relevant work." (Tr. at 16–17.) The administrative law judge ruled that Bazile was capable of working again as a key-punch operator, which "is sedentary in exertional requirements." (Tr. at 17.)

On December 2, 1995, Bazile requested review of the decision of the administrative law judge by the Appeals Council (the "Council"). (Tr. at 11.) The Council denied Bazile's request for review, but then vacated its decision in order to consider an updated medical report from Dr. Goodman. (Tr. at 7, 10, 194–215.) The report proved unpersuasive and on May 25, 1999, the Council again denied Bazile's request for review. (Tr. at 4–5.) The decision of the administrative law judge therefore became the final decision of the Commissioner with respect to Bazile's claim. *See* 42 U.S.C. § 405(g); *Da Rosa v. Secretary of Health and Human Servs.*, 803 F.2d 24, 25 (1st Cir.1986) (per curiam). Bazile filed the instant civil action on July 27, 1999.

## II. STANDARD OF REVIEW

■ The Court's review of a Social Security disability benefit determination is limited under 42 U.S.C. § 405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see also Durant v. Chater*, 906 F.Supp. 706, 710 (D.Mass.1995). The First Circuit has stated that "substantial evidence" exists when " 'a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.' " *Ortiz v. Secretary of Health and Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (quoting *Rodriguez v. Secretary of Health and Human Servs.*, 647 F.2d 218, 222 [1st Cir.1981]). "It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence." *Id.* Accordingly, this Court must affirm the Commissioner's decision "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodriguez Pagan v. Secretary of Health and Human Servs.*, 819 F.2d 1, 3 (1st Cir.1987), *cert. denied* 484 U.S. 1012, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988) (citing *Lizotte v. Secretary of Health and Human Servs.*, 654 F.2d 127, 128 [1st Cir.1981]). This Court may, however, review the conclusions of law of the administrative law judge, *see Slessinger v. Secretary of Health and Human Servs.*, 835 F.2d 937, 939 (1st Cir.1987) (per curiam) (citing *Thompson v. Harris*, 504 F.Supp. 653, 654 [D. Mass.1980]); and may invalidate findings of fact which are "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999) (per curiam).

■ The claimant bears the " 'heavy initial burden' of establishing through credible evidence that [she] was disabled within the meaning of the Social Security Act." *Guyton v. Apfel*, 20 F.Supp.2d 156, 161 (D.Mass.1998) (quoting *Mandziej v. Chater*, 944 F.Supp. 121, 126 [D.N.H.1996]) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47, 107 S.Ct. 2287, 96 L.Ed.2d 119 [1987]); *see also Santiago v. Secretary of Health and Human Servs.*, 944 F.2d 1, 5 (1st Cir.1991). A "disability" is defined under the Social Security Act as "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A). Section 423(d)(2)(A) further provides:

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

§ 423(d)(2)(A). In making a disability determination, the administrative law judge must follow a sequential evaluation process following the five steps described in sections 404.1520 and 416.920 of Title 20 of the C.F.R., which may be summarized as a series of inquiries:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from performing past relevant work; and

(5) whether the impairment prevents the claimant from doing any other work.

See 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the step upon which determination of a claimant's disability may be made. See id.; see also Goodermote v. Secretary of Health and Human Servs., 690 F.2d 5, 6–7 (1st Cir.1982) (discussing sequential analysis process). The process is the same for SSDI and SSI. See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (citing both sections as authority for single "five-step sequential evaluation process").

## III. DISCUSSION

### A. Bazile's Arguments

Bazile argues that the Commissioner's decision to deny benefits was based on errors of law and is unsupported by substantial evidence. See Pl.'s Mem. at 1. Her primary argument is that the administrative law judge failed properly to evaluate her subjective complaints of pain, thereby improperly evaluating her residual functional capacity. See id. at 7–10. Her second argument, that the finding of the administrative law judge that Bazile was not a credible witness is not supported by substantial evidence, see id. at 11–12, is more properly considered as a component of the pain argument, and is therefore discussed within that analysis below.

### B. Bazile's Subjective Complaints of Pain: The Avery Factors

In cases such as Bazile's in which the claimant has a medically-determinable severe physical impairment that is of less severity than the impairments described in Appendix 1, Subpart P, of the Regulations, the administrative law judge must consider the impact of the related symptoms, including pain, on the claimant's residual functional capacity. See 20 C.F.R. § 404.1529(d)(4); Avery v. Secretary of Health and Human Servs., 797 F.2d 19, 22–23 (1st Cir.1986) (Coffin, J.). The Court must pay "particular attention" to the evaluation of complaints of pain by the administrative law judge in light of their "subjective nature." See Ortiz, 890 F.2d at 523. Avery established the legal standard to be applied to pain analyses. See Avery, 797 F.2d at 28–29. "In determining the weight to be given to allegations of pain, [the Court of Appeals for the First Circuit has] stated that complaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." Dupuis v. Secretary of Health & Human Servs., 869 F.2d 622, 623 (1st Cir.1989) (per curiam) (interpreting Avery). This distinction provides leeway for the administrative law judge to award benefits to people who suffer from a degree of pain exceeding that which is typically associated with their physical ailment. Where, as here, the claimant alleges pain of a severity more extensive than the objective medical evi-

dence, *Avery* requires the administrative law judge to "investigate all avenues presented that relate to subjective complaints." *Avery,* 797 F.2d at 28. These considerations, commonly referred to as "the *Avery* factors," are comprised of the following:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) Treatment, other than medication, for relief of pain; (5) Functional restrictions; and (6) The claimant's daily activities.

*Id.* at 29. Bazile argues that the administrative law judge failed to consider all of the *Avery* factors and therefore misapplied the legal standard for assessing her pain. *See* Pl.'s Mem. at 8–10. A review of the record indicates that the administrative law judge failed properly to consider at least two of the *Avery* factors—Bazile's daily living activities and the effect of Bazile's pain medication—and so committed legal error that warrants remand. The genesis of the error was the determination that Bazile lacked full credibility.

### a. Credibility Determination

■ In her testimony, Bazile described a life devoid of meaningful activity, immured by constant pain that disrupts her sleep, causes her to lie in bed most of the day, prevents her from doing simple chores around the house, and prohibits showering and attending appointments without the assistance of her sister. *See id.* at 8–9 (citing [Tr. 35–36, 45–46]). This testimony is strong support for Bazile's contention that she is unable to return to her previous employment. The administrative law judge discounted Bazile's testimony after concluding that "she cannot be accepted as a fully credible witness." (Tr. at 17.)

"[T]he ALJ is ... free to find that appellant's testimony regarding his pain and exertional limitations is not credible. This result, however, must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve the appellant." *Da Rosa,* 803 F.2d at 26 (internal citation omitted) (vacating denial of benefits to appellant whose testimony was discounted for lack of credibility); *see also Avery,* 797 F.2d at 22 ("[D]enial decisions must state why subjective testimony of limitation of function because of pain is not supported by the evidence."). Bazile argues that the Commissioner failed to meet the *Da Rosa* standard when he discounted Bazile's testimony as not fully credible. *See* Pl.'s Mem. at 11.

To comport with *Da Rosa,* the conclusion that Bazile lacked credibility must be supported by "substantial evidence" in the record, and the administrative law judge must have made "specific findings" as to such evidence. *See Da Rosa,* 803 F.2d at 26. For the purpose of this discussion, it is appropriate to begin by ascertaining whether the administrative law judge made specific findings of fact in considering Bazile's credibility. "The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health and Human Servs.,* 829 F.2d 192, 195 (1st Cir.1987) (per curiam). It is apparent from a plain reading of the written decision that the administrative law judge made specific findings of fact upon which he based his decision to reject Bazile's testimony as less than credible. The decision reads, in pertinent part:

> The claimant's subjective assertions of disabling symptoms have been considered as required by Social Security Ruling 88–13, however, she cannot be accepted as a fully credible witness. The

claimant had positive Waddell signs for exaggeration of her symptoms as noted by Dr. Raineville. She has received minimal medical treatment since May 1992, despite her assertions that she has been disabled for 4 years. In May 1992, she was noted to have minimal symptoms (Exhibit 18).

(Tr. at 17.) The Court may infer from this passage that the administrative law judge based his assessment of Bazile's credibility on three findings: Bazile's positive response to Waddell stimuli,[2] the absence of rigor in her medical treatment, and an apparent waning of her symptoms as reported less than a year after the alleged onset. Each of these findings is based on substantial evidence in the record. Dr. Raineville's medical report cites the Waddell signs. (Tr. at 147.) The record shows gaps in medical treatment subsequent to May 1992, including a seventeen-month span between May 1992 and December 1993, (Tr. at 152–162), such gaps are acceptable evidence from which it may be inferred that claimant's pain was not unrelenting. *See Ortiz*, 955 F.2d at 769. Finally, a May 1992 medical report states that Bazile had "achieved a very good result from treatment," and that she complained only of "occasional, minimal lumbar and ankle pain." (Tr. at 162.)

At first blush, the administrative law judge may appear to have satisfied the *Da Rosa* requirement. But his credibility determination is flawed because it is too broad. The findings upon which the administrative law judge based his credibility determination are sufficient to discredit portions of Bazile's testimony, but not all of it. Most significantly, there is no evidence that impugns Bazile's description of her daily living activities. The Ninth Circuit has held that such "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 [9th Cir.1993] ["It's not sufficient for the ALJ to make only general findings; he must state *which* pain testimony is not credible and what evidence suggests the complaints are not credible." (citation omitted) (emphasis added)]).

The First Circuit has yet to define the breadth of the authority of an administrative law judge to discount evidence for lack of credibility. *Da Rosa* and its progeny are silent on the question of whether an administrative law judge may discount all of a claimant's testimony based on factual findings which contradict or undermine only portions thereof. This Court may nonetheless sharpen the *Da Rosa* credibility standard to parallel that articulated by the Ninth Circuit without offending First Circuit precedent. *See, e.g., Frustaglia*, 829 F.2d at 195 (stating a preference for "more express findings" than the general findings cited by the administrative law judge in credibility determination). Indeed, support for a stricter credibility standard may be found by tracing the source of the First Circuit's holding in *Da Rosa*. The *Da Rosa* court cited *Benko v. Schweiker*, 551 F.Supp. 698 (D.N.H.1982) for the proposition that credibility determinations must be backed by "specific findings." *See DaRosa*, 803 F.2d at 26 (citing *Benko*, 551 F.Supp. at 704). *Benko* drew its authority from *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir.1974). *See Benko*, 551 F.Supp. at 704 (citing *Baerga*, 500

---

2. Waddell signs are indications of non-organic causes of back pain; that is, signs that a patient's reported pain has a behavioral origin. *See* P. Douglas Kiester, Is It Malingering or Is It 'Real'? Eight Signs that Point to Nonorganic Back Pain, *Postgraduate Medicine*, Dec. 1999, *available in* (visited Sept. 14, 2000) <*http://www.postgradmed.com/issues/1999/12_99/kiester.htm*>. A positive response to at least three of eight signs is considered predictive of non-organic, non-musculoskeletal causes of pain. *See id.* The record indicates that Bazile responded positively to three Waddell signs—including those cited by the administrative law judge—overreactive or exaggerated, nonreproductible response to certain stimuli; superficial tenderness; and distracted straight-leg raise. (Tr. at 147.)

F.2d at 312). There, the Third Circuit criticized the Social Security Hearing Examiner's summary rejection of the claimant's testimony, including complaints of disabling pain:

> In our view an examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence. It is incumbent upon the examiner to make specific findings—the court may not speculate as to his findings. *Williams v. Celebrezze*, 359 F.2d 950 (4th Cir.1966). "We think it is not too much to require that an administrative decision that a claimant is not eligible . . . be supported by explicit findings of all facts that are essential to the conclusion of ineligibility." *Choratch v. Finch*, 438 F.2d 342, 343 (3d Cir.1971).

*Baerga*, 500 F.2d at 312–313 (alteration in original).[3]

This Court applies the Ninth Circuit's reasoning in *Lester* to the instant case and rejects the discrediting of Bazile's testimony of her daily living activities. *See Lester*, 81 F.3d at 834 ("In particular, no reasons were given for rejecting Lester's testimony as to the 'marked' limitations on his activities of daily living.").

### b. Daily Living Activities

 Given that Bazile's testimony was the only evidence of this essential factor in determining disability, and the administrative law judge improperly rejected it, this Court concludes that the administrative law judge committed legal error by failing to give it due consideration as part of a determination of Bazile's residual functional capacity. It is insufficient for the administrative law judge to consider "most" of the *Avery* factors. All six must be given consideration. *See Aguiar v. Apfel*, 99 F.Supp.2d 130, 137 (D.Mass. 2000) (Tauro, J.) (holding that consideration of "most" of Avery factors is insufficient where administrative law judge failed to consider claimant's daily living activities); *see also Rohrberg v. Apfel*, 26 F.Supp.2d 303, 308 (D.Mass.1998) (Freedman, J.) (holding that a determination of residual functional capacity "must 'includ[e] a discussion of why reported daily activity restrictions are or are not reasonably consistent with the medical evidence' " [quoting *Avery*, 797 F.2d at 29] ). The *Rohrberg* court discussed the importance of a thorough examination of a claimant's description of her daily living activities:

> The record reveals that while the ALJ examined Rohrberg's daily activities, she did so in a cursory manner which did not

---

3. Indeed, the *Baerga* court's admonition to "hold administrative officers to high standards in the discharge of the fact-finding function," *Baerga*, 500 F.2d at 311 n. 2, is based on the counsel of *United States v. Forness*, 125 F.2d 928 (2d Cir.1942), which has this to say regarding the "grave importance of fact-finding":

> The correct finding, as near as may be, of the facts . . . is fully as important as the application of the correct legal rules to the facts as found. An impeccably "right" legal rule applied to the "wrong" facts yields a decision which is as faulty as one which results from the application of the "wrong" legal rule to the "right" facts. The latter type of error, indeed, can be corrected on

appeal. But the former is not subject to such correction unless the appellant overcomes the heavy burden of showing that the findings of fact are "clearly erroneous." Chief Justice Hughes once remarked, "An unscrupulous administrator might be tempted to say 'Let me find the facts for the people of my country, and I care little who lays down the general principles.' " That comment should be extended to include facts found without due care as well as unscrupulous fact-finding; for such lack of due care is less likely to reveal itself than lack of scruples, which, we trust, seldom exists.

*Id.* at 942 (footnote omitted).

allow for meaningful determination of Rohrberg's RFC or of her subjective assertions of pain.

The Court concludes that the ALJ made a woefully inadequate examination of Rohrberg's "subjective assertions" of pain. The purpose of the RFC is to determine the effects of the claimant's impairment on her ability to perform work, including any limitations on that ability resulting from pain. *See Avery,* 797 F.2d at 28. Examining the claimant's daily activities helps to shed light on the veracity of the claimant's claims of pain and illuminate an RFC determination. *See id.* at 28–29. But where the ALJ makes a cursory examination of the claimant's daily activities and concludes that they are inconsistent with her claims of pain, without any specific explanation or reference to supporting evidence in the record, a reviewing court is left in the dark and the RFC is cast in a pallor of doubt.

*Rohrberg,* 26 F.Supp.2d at 309.

c. Effects of Medication

The administrative law judge also failed to give due consideration to the effects of medication. Although her attorney questioned Bazile regarding this *Avery* factor, the transcript reveals the insufficiency of the exchange, which took place following a lengthy description of the seven different medications Bazile takes regularly:

Q: Okay. Now, do you comply with your medications, Ms. Bazile? Do you take them when you're supposed to take them?

A: Yeah, I take them when I'm supposed to because, you know, otherwise, I'm going through, like, screaming and yelling in the house.

Q: Um-hum.

A: It's so much pain.

Q: Do—do your medications cause you any side effects?

A: No. There's one—because I took so much.

Q: Then, just—my final question is, does your back pain go away when you take your medication?

A: It doesn't go—go away. I get better, but then, go away, and back again.

(Tr. at 50.)

The inadequacy of this exchange—and in particular Bazile's "No" answer—is better appreciated within the context of the full testimony, during which Bazile, whose native language is Spanish, appeared to misunderstand many of the questions put to her. For example, when her attorney asked her whether she was right-handed or left-handed, Bazile replied, "No. I'm not, like, one-handed, definitely." (Tr. at 24.) Later, her attorney's attempt to ascertain how many times Bazile awoke during the night elicited this nonsensical exchange:

Q: Okay, so, all right, but how many times are you up during the night, is what I'm saying. You—well, you go to bed, and then—but how many times are you up and down?

A: I think, you now, I can—it's like every day, up and down. Because, you know—

Q: I know, but during the night—

A: Um-hum.

Q: Focus on what I'm saying.

A: Um-hum.

Q: I'm asking you, when you go to bed—

A: Um-hum

Q: —during the night, do you sleep a full stretch night? How many times are you up and down during the night?

A: Like, for instance, if I wake up at, like, 1 o'clock in the morning?

Q: Yeah.

A: 1 o'clock in the morning; so, I'm suffering. My sister have to give me some pills to take to make me feel better.

Q: Okay—

A: And then, you know, I could have got more sleep one place. You know, I can't—

Q: Okay.

A: —even move—move the left—left, over here, then, stay like that. So, move the right one sometimes, like, and I don't feel comfortable. I can't sleep. I can go through a whole night without sleeping.

Q: Okay....

(Tr. at 34–35.) It is clear from the transcript that Bazile, perhaps because of a language barrier, frequently was confused about the questions asked by her attorney and the administrative law judge. Often, the attorney and the administrative law judge persisted in their questioning in an attempt to elicit a helpful response; but neither did so with respect to Bazile's testimony regarding the effects of her pain medication. Because the administrative law judge did not adequately develop the record with regard to the effects of Bazile's pain medication, his conclusion that Bazile has the residual functional capacity to perform sedentary work is not supported by substantial evidence. *See Corchado v. Shalala*, 953 F.Supp. 12, 16 (D.Mass.1996) ("[T]he Administrative Law Judge neglected to ask [the claimant], as *Avery* requires, whether any of [the claimant's pain] treatments had either alleviated his pain or caused any adverse side effects."). When evidence has not been evaluated because of an error of law, the Secretary's decision must be set aside. *See DaRosa*, 803 F.2d at 26.

### C. To Reverse or Remand?

■ There is some disagreement among the federal circuit courts as to the proper course of action in cases in which the credibility determination is found to result in legal error. In the Ninth Circuit, "where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited," the court does not "remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, that testimony is also credited as a matter of law." *Lester*, 81 F.3d at 834 (quoting *Varney*, 859 F.2d at 1401 [internal quotation marks omitted]). In *Lester*, the Court ruled that the credited testimony demonstrated that the claimant was in fact disabled, and ordered that benefits be paid, noting that "[n]o purpose would be served by remanding for further proceedings." *Id.* The First Circuit, however, has explicitly stopped short of giving full legal effect to improperly discredited testimony. *See, e.g., Nguyen*, 172 F.3d at 36 (remanding "for further proceedings" where administrative law judge improperly discredited testimony of disabling pain); *Corchado*, 953 F.Supp. at 16 ("After making the proper inquiries, the Administrative Law Judge is still free to find that Corchado's allegations concerning the extent of his pain are not credible, provided that the Administrative Law Judge makes specific findings as to the relevant evidence [s]he considered in determining to disbelieve the [claimant]" [internal quotation marks omitted] [citation omitted] [alterations in original]). Therefore, rather than reverse outright, this Court remands Bazile's case for reconsideration.

## IV. CONCLUSION

For the foregoing reasons, the Court VACATES the decision of the administrative law judge and REMANDS for further proceedings consistent with this opinion.