**Wilmaliz HUERTAS, Plaintiff**

v.

**Michael J. ASTRUE, Commissioner Security Administration, Defendant.**

Civil Action No. 11–30064–KPN.

United States District Court, D. Massachusetts.

Feb. 21, 2012.

Richard C. Roth, Law Office of Richard C. Roth, Springfield, MA, for Plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Defendant.

*MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR JUDGMENT REVERSING THE COMMISSIONER'S DECISION and DEFENDANT'S MOTION FOR JUDGMENT AFFIRMING THE COMMISSIONER'S DECISION (Document Nos. 17 and 21)*

NEIMAN, United States Magistrate Judge.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to Social Security Disability Insurance ("SSDI") benefits pursuant to 42 U.S.C. § 405(g). Wilmaliz Huertas ("Plaintiff") asserts that the Commissioner's decision denying her such benefits— memorialized in a September 10, 2010 decision of an administrative law judge—is not supported by substantial evidence and contains errors of law. She has filed a motion for judgment on the pleadings and the Commissioner, in turn, has moved to affirm.

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); Fed.R.Civ.P. 73. For the following reasons, the Commissioner's motion to affirm will be denied and Plaintiff's motion will be allowed to the extent it can be fairly read to include a request for remand.

## I. STANDARD OF REVIEW

■■■ A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981).

■■■ The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts. *Id.*; *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir.1987). A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. *See Manso–Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d

15, 16 (1st Cir.1996). In the end, the court maintains the power, in appropriate circumstances, "to enter … a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand [ ] the cause for a rehearing." 42 U.S.C. § 405(g).

## II. BACKGROUND

Since the parties are well familiar with the pertinent facts, only a brief outline is necessary. Plaintiff filed her application for SSDI benefits on June 5, 2008. (Administrative Record ("A.R.") at 7.) She was born in 1962, completed almost two years of college, and has worked as an account executive, office worker, and teacher's aide. (*Id.* at 20–21.) On October 21, 2003, while working as a teacher's aide and lifting a child up some stairs, she injured her left leg. (*Id.* at 608.) She received worker's compensation for this incident until March, 2009. (*Id.* at 9.) In June 2008, Plaintiff claimed disability resulting from back and leg limitations stemming from her original leg injury, as well as unrelated anxiety and depression, with an alleged onset date of May 5, 2007. (*Id.* at 7.) In July 2009, she underwent back surgery in an attempt to remedy her various afflictions. (*Id.* at 18.) After her claim was denied both initially and on reconsideration, she requested a hearing before an administrative law judge ("ALJ"), which occurred on June 30, 2010. (*Id.* at 7.)

In a decision dated September 10, 2010, the ALJ denied Plaintiff's claim, concluding that she was not disabled as defined by the Social Security Act ("the Act"). (*Id.* at 22.) Plaintiff was also informed that the Commissioner's Decision Review Board had selected the ALJ's decision for review. (*Id.* at 4.) However, because the Board failed to act within ninety days, the ALJ's decision became final. In due course, Plaintiff secured new counsel and filed the instant action. The Commissioner then compiled the administrative record and the parties submitted the cross-motions currently at issue.

## III. DISABILITY STANDARD AND THE ALJ'S DECISION

An individual is entitled to SSDI benefits if, among other things, she has an insured status and, prior to its expiration, is disabled. *See* 42 U.S.C. § 423(a)(1)(A) and (D). The Act defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is considered disabled under the Act

> only if his physical and mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). *See generally Bowen v. Yuckert,* 482 U.S. 137, 146–49, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed? If [s]he is, the claimant is automatically considered not disabled.

> Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits the claimant's physical or mental capacity to perform basic work-related functions." If [s]he does not have an impairment of at least this degree of

severity, [s]he is automatically not disabled.

Third, does the claimant have an impairment equivalent to a specific list of impairments in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

. . . .

Fourth ... does the claimant's impairment prevent [her] from performing work of the sort [s]he has done in the past? If not, [s]he is not disabled. If so, the agency asks the fifth question. Fifth, does the claimant's impairment prevent [her] from performing other work of the sort found in the economy? If so [s]he is disabled; if not [s]he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6–7 (1st Cir.1982).

In coming to her decision, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since her alleged disability onset date. (A.R. at 9.) At steps two and three the ALJ determined that Plaintiff has the following severe impairments: torn meniscus of the left knee, degenerative disc disease, fibromyalgia, anxiety disorder, and depression. (*Id.* at 10.) The ALJ determined that these impairments do not meet or medically equal one of the impairments listed in the regulations. (*Id.* at 13.) The ALJ determined at step four that Plaintiff could not return to her past work and at step five found that, given Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that she can perform. (*Id.* at 20–21.)

## IV. DISCUSSION

Plaintiff raises a number of challenges to the ALJ's decision. First, Plaintiff argues that the ALJ erroneously constructed a hypothetical regarding Plaintiff's ability to perform several jobs existing in substantial numbers in the national economy and incorrectly relied on the response of the Vocation Expert ("VE"). Second, Plaintiff argues that the ALJ improperly discounted Plaintiff's limitations stemming from fibromyalgia when determining Plaintiff's residual functional capacity. Third, Plaintiff argues that the ALJ improperly assessed Plaintiff's credibility. The court will address these arguments *seriatim,* finding in the end that Plaintiff's third argument requires a remand. Accordingly, Plaintiff's first two arguments will be addressed in a somewhat truncated fashion.

## A. The ALJ's Hypothetical Question

Plaintiff argues that the ALJ improperly relied on the VE's response to the ALJ's second hypothetical question when determining the number of jobs Plaintiff could do based on her residual functional capacity. The court does not entirely agree.

After determining that a claimant is unable to return to her past work, the burden is on the Commissioner to prove that other jobs exist which the claimant could do. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir.1986). When addressing that burden, an administrative law judge often relies on the testimony of a vocational expert to establish the number of jobs existing in the national economy which a person having the same residual functional capacity of the claimant could do. However, "in order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities." *Arocho v. Sec'y of Health and Human Servs.*, 670 F.2d 374, 375 (1st Cir.1982). If an administrative law judge poses a hypothetical to a vocational expert that does not clearly encompass the same limitations

a claimant suffers, then the vocational expert's response will assuredly be irrelevant and may not be relied on by the administrative law judge.

The hypothetical at issue in the instant case was phrased as follows:

> Okay. Now as far as hypothetical number two. I'm going to take a look at these items here that are in Dr. Kelley's—I mean Dr. Kenny. Again, this is a hypothetical ... He said not to lift more than 35 pounds occasionally, 15 pounds frequently and seven pounds constantly ... posturals are occasional. And he puts a limit in here about walking for no more than 30 minutes before she must change position or activity. I'm going to say, let's do a sit/stand option. So that the essential job duties of the job could be performed in either a seated or a standing capacity.

(A.R. at 73.) The VE answered that there were three jobs which such a person could do: parking lot attendant, ticket taker, and toll collector. (*Id.* at 74.) The ALJ relied on this response when denying Plaintiff's benefits. (*Id.* at 21.)

Plaintiff raises three problems with the hypothetical: (i) the "sit/stand option" was impermissibly vague as to the frequency which a person may alternate positions, (ii) it disregarded physical limitations found by an evaluating physician, and (iii) it ignored any limitations derived from Plaintiff's anxiety or depression. In response, the Commissioner contends that an at-will frequency of changing position was inherent in a "sit/stand option" and that the ALJ exercised proper discretion in crafting the remaining terms of the hypothetical. For present purposes the court finds that the Commissioner has somewhat the better argument.

1. Sit/Stand Option

■ Plaintiff first argues that the above hypothetical did not sufficiently es-

tablish to the VE the frequency at which the potential employee must change position. *See Arocho*, 670 F.2d at 375 (administrative law judge not specific enough when crafting a hypothetical containing the phrase "the claimant can do sedentary work in which he can alternation position, sit or stand."). Plaintiff argues that the ALJ here was similarly vague in crafting her hypothetical by specifying the requirement of "a sit/stand option[,] [s]o that the essential job duties of the job could be performed in either a seated or a standing capacity." (A.R. at 73.)

Plaintiff's reliance on *Arocho* at this time is misplaced. The *Arocho* court did not base its conclusion on the mere fact that no sitting and standing frequency was specified by the administrative law judge. Rather, the court based its holding on the administrative law judge's hypothetical being supported factually by only two ambiguous reports that disagreed as to the frequency with which the claimant needed to change positions and the administrative law judge's "fail[ure] to clarify this ambiguity." *Arocho*, 670 F.2d at 376. In contrast, the ALJ here stated that she was relying on the detailed report from Dr. Charles Kenny when crafting the sit/stand portion of the hypothetical. (A.R. at 73.) Furthermore, the ALJ clarified the frequency of the sit/stand option by stating that the option required "the essential job duties of the job could be performed in either a seated or a standing capacity." (*Id.*) In addition, the claimant in *Arocho* was only qualified to perform sedentary work. *Arocho*, 670 F.2d at 375; *see also* SSR 96-9p (when evaluating those only able to perform sedentary work "[t]he [residual functional capacity] assessment must be specific as to the frequency of the individual's need to alternate sitting and standing"). Since one who is restricted to performing sedentary work is already narrowly limited to a range of jobs, it is

important to identify with specificity any further limitations on the person's residual functional capacity.

Here, in contrast, Plaintiff was determined by the ALJ to have the ability to perform a subset of light work. (A.R. at 14.) Such a range of work does not require an explicit statement of the frequency of a sit/stand option when crafting hypotheticals for a vocational expert. *See Walls v. Barnhart,* 296 F.3d 287, 291 (4th Cir.2002) (no requirement of heightened clarity in specifying the frequency of a sit/stand option when crafting hypothetical for vocational expert). Furthermore, as the Commissioner argues, the use of the phrase "sit/stand option" by the ALJ implied an at-will frequency of changing position, and the VE understood the phrase to contain such a meaning. *See Ketelboeter v. Astrue,* 550 F.3d 620, 626 (7th Cir.2008) (administrative law judge's use of a sit/stand option "as needed" in hypothetical implied broad flexibility of frequent sitting and standing). Of course, on remand, Plaintiff's residual functional capacity may be re-determined, thereby necessitating a more specific clarification of any sit/stand option by the ALJ.

### 2. Reliance on Dr. Kenny's Report in Crafting Hypothetical

■■■ Plaintiff also contends that the ALJ impermissibly ignored portions of Dr. Kenny's report when limiting all climbing, balancing, stooping, kneeling, crouching, and crawling by the Plaintiff to only occasional frequency in crafting a hypothetical for the VE and improperly "substitute[d] [her] own layman's opinion for the findings and opinion of a physician." *Gonzalez Perez v. Sec'y of Health and Human Servs.,* 812 F.2d 747, 749 (1st Cir.1987). The court does not entirely agree. An administrative law judge has the discretion to base her finding of a claimant's residual functional capacity from pieces of multiple medical reports; she is not limited to se-

lecting one doctor's findings to the exclusion of all others. *See Evangelista,* 826 F.2d at 144. At this time, the court cannot say that there is reversible error on the Commissioner's part.

### 3. Anxiety and Depression Limitations

■■■ Plaintiff next argues that the ALJ erroneously failed to include any residual functional capacity limitations based on the step two determination that she suffered severe impairments of anxiety and depression. The court disagrees. A finding of a severe limitation at step two does not necessitate a finding of a limited residual functional capacity at step four. A finding of severity at step two requires "only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." SSR 85-28. This is "a *de minimis* policy, designed to do no more than screen out groundless claims." *McDonald v. Sec'y of Health & Human Servs.,* 795 F.2d 1118, 1124 (1st Cir.1986). Thus, standing alone, a finding of severity at step two does not require a further finding that the impairments had a negative impact on a claimant's residual functional capacity at step four. *See Sykes v. Apfel,* 228 F.3d 259, 268 n. 12 (3d Cir. 2000). Furthermore, the ALJ's conclusion that Plaintiff's anxiety and depression did not limit her concentration, memory, or social interaction appears to be supported by substantial evidence; Plaintiff's most recent evaluation indicated no limitations resulting from her anxiety and depression and she has repeatedly refused treatment for those conditions. (A.R. at 16.)

### B. Fibromyalgia Limitations

■■■ Plaintiff also contends that the ALJ improperly dismissed her fibro-

myalgia as an indication of her residual functional capacity. Although finding Plaintiff's fibromyalgia to be a severe impairment at step two, the ALJ determined that any limitations resulting therefrom could be addressed by limiting the frequency of Plaintiff's climbing, balancing, stooping, kneeling, crouching, and crawling to occasional. (*Id.* at 18.) Plaintiff, in the court's view, did not meet her burden of demonstrating any further limitations at step four of the analysis. Indeed, it appears that there is little evidence in the record to indicate any specific limitations beyond the mere diagnosis of fibromyalgia by Dr. Ahmad. (*Id.* at 18.)

## C. The ALJ's Credibility Assessment of Plaintiff

Finally, Plaintiff contends—this time with success—that the ALJ erroneously found her credibility to be lacking with regard to her testimony of subjective pain. As Plaintiff argues, the ALJ ignored Plaintiff's physicians' evaluations of her as credible, incorrectly found her to have lied about a past knee operation, and improperly relied on a physician's identification of positive Waddell signs. Waddell signs indicate a patient's reported pain has a behavioral origin, implying a degree of speciousness in the patient's reported symptoms. *See Bazile v. Apfel,* 113 F.Supp.2d 181, 187 n. 2 (D.Mass.2000). Normally, at least three signs must be found in order to consider them relevant to credibility. *Id.*

As previously explained, it is the responsibility of the Commissioner to make credibility determinations. *Rodriguez,* 647 F.2d at 222. Such determinations are generally entitled to deference but may be disturbed if they are not supported by specific findings of substantial relevant evidence. *Da Rosa v. Sec'y of Health and Human Servs.,* 803 F.2d 24, 26

(1st Cir.1986). In addition, "the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence." SSR 96–7p; *see also Avery v. Sec'y of Health & Human Servs.,* 797 F.2d 19, 22 (1st Cir.1986).

Here, in determining Plaintiff's residual functional capacity, the ALJ found Plaintiff's credibility lacking and, therefore, discounted her subjective complaints of pain and the limitations arising from that pain. (A.R. at 19.) The ALJ identified four factors in support of this determination: (i) Plaintiff's misrepresentation of her medical history to Dr. Bonhert, (ii) Dr. Kenny's report stating that a certain "Dr. Yablon" had identified positive Waddell tests with Plaintiff, (iii) the lack of complaints regarding Plaintiff's knee, especially after her July 2009 surgery, and (iv) the presence of inconsistencies in medical reports regarding Plaintiff's left knee condition over the years. (*Id.* at 17.) Upon examination, this analysis does not hold up.

First, contrary to the ALJ's claim, the record contains no support that Plaintiff misrepresented to Dr. Bohnert that she had undergone bilateral knee replacement surgery. Even a cursory examination of the record should have made clear to the ALJ that Plaintiff told Dr. Bohnert it was her husband, not she, who had the knee surgery. (*Id.* at 552.) Therefore, Plaintiff made no misrepresentation to the doctor.

Second, the ALJ's reliance on Dr. Kenny's mention of another doctor who, two years earlier, had found an unspecified number of positive Waddell signs regarding the extent of Plaintiff's knee's range of motion was tenuous at best. Granted, some courts have found that Waddell signs may be considered by an administrative

law judge in making a credibility determination of a claimant. *See Osenbrock v. Apfel,* 240 F.3d 1157, 1166 (9th Cir.2001) (affirming administrative law judge's use of Waddell signs in determining a claimant's credibility); *Bazile,* 113 F.Supp.2d at 187. The problem with the ALJ's reliance on Waddell signs here, however, is that they were mentioned only in passing by one doctor regarding a report, not of record, of yet another doctor who gave no indication how many signs were found. Moreover, at best, Waddell signs may be used as one minor factor in a credibility determination. *See* Chris Main and Gordon Waddell, *Spine Update, Behavioral Responses to Examination,* SPINE, 1998, vol. 23, no. 21, at 2367–71 (stating Waddell signs are more accurately described as "behavioral responses to examination" and, alone, are not a test of credibility). When, as here, the reference to Waddell signs is vague and nonspecific, the ALJ ought not to have relied on them to the extent she did.

Third, despite the ALJ's statement to the contrary, there was no dearth of complaints by Plaintiff in the record with regard to her back and knee difficulties, including after the July 2009 disc surgery. The record indicates Plaintiff had complained of knee and hip problems consistently from January 2004 until her July 2009 disc surgery (*see* A.R. at 417–18, 404–05, 395, 369–70), as well as after the surgery. (*See id.* at 582, 583, 599, 644, and 594.)

Finally, the ALJ's findings of inconsistencies between medical reports and Plaintiff's claims do not appear to be supported by the record. The ALJ focused on Plaintiff's shifting gait and range of knee motion, as well as two instances where Plaintiff complained of right leg pain, when it was her left leg that underwent knee surgery. (*Id.* at 17.) In the court's view, however, Plaintiff's mere shifting gait and

range of motion over a span of six years does not alone justify a finding of a lack of credibility. More importantly, perhaps, Plaintiff's complaints of right knee pain were related to her degenerative disc disease and were made in addition to, not in lieu of, complaints of left knee pain and limitations.

In sum, the ALJ's dismissal of Plaintiff's subjective complaints was grounded in inaccurate, if not improper, credibility findings. Thus, on remand, the ALJ must follow the guidance of *Avery v. Sec'y of Health & Human Servs.,* 797 F.2d 19 (1st Cir.1986), and SSR 96–7p when considering Plaintiff's subjective complaints and, in turn, when evaluating Plaintiff's residual functional capacity.

## V. CONCLUSION

For the reasons stated above, the Commissioner's motion to affirm is DENIED and Plaintiff's motion is ALLOWED insofar as it may fairly be read to include an alternative request for a remand.

IT IS SO ORDERED.