**Martha DURANT, Plaintiff,**

v.

**Shirley CHATER, Commissioner of the Social Security Administration, Defendant.**

**Civ. A. No. 95–10545.**

United States District Court, D. Massachusetts.

Oct. 24, 1995.

Ellen N. Wallace, Greater Boston Legal Services, Boston, MA, for Martha Durant.

Lori J. Holik, U.S. Attys. Office, Boston, MA, for Shirley Chater.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The plaintiff Martha Durant ("Durant") seeks judicial review of the final decision of

the Secretary of Health and Human Services ("the Secretary") denying her application for Supplemental Security Income benefits based on disability ("SSI benefits"). Durant argues the Secretary's decision was legally erroneous and not based upon substantial evidence. Accordingly, Durant asks this Court either to reverse and set aside the defendant's decision, or to remand her claim for reconsideration. Durant also seeks reasonable attorney fees and costs.

## I. PROCEDURAL HISTORY

Durant first filed for SSI benefits on November 28, 1984. The Secretary denied this claim on April 1, 1985. Durant did not appeal this denial. Durant again filed for SSI benefits on June 27, 1986. The Secretary approved this application based on a finding that Durant had severe impairments during the time frame encompassing her second application and its later approval. Durant's second application is not at issue in this appeal.

Following the decision of the First Circuit in *McDonald v. Secretary of Health and Human Services*, 795 F.2d 1118 (1st Cir. 1986), the Secretary resurrected Durant's first application and reviewed it according to the new *McDonald de minimis* standard. The Secretary again denied Durant's claim and, on appeal, an Administrative Law Judge affirmed the Secretary's decision because during the relevant period—between November 28, 1984, and April 1, 1985, from the filing of the first application to its denial—Durant suffered no severe impairments. The Secretary's Appeal Council declined to review the decision of the Administrative Law Judge, thus rendering the decision of the Administrative Law Judge the final decision of the Secretary subject to judicial review. Thus, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Durant's appeal comes now before this Court.

## II. BACKGROUND

At the time of her first application for SSI benefits, Durant was sixty years old. She had completed the ninth grade without any further education. She lived alone and was unemployed. Prior to the period in question, Durant had sigmoid colon resection surgery for treatment of diverticulitis in 1974 and she had been diagnosed in 1978 with mild degenerative joint disease of the lumbosacral spine. In 1986, Durant's physician reported she suffered from the following: mild osteoarthritis of the right elbow; mild degenerative joint disease of the heels; and mild essential hypertension. He further found Durant suffered "very mild functional limitations" related to degenerative arthritis of the lumbosacral spine and both feet.

Durant also underwent psychological and psychiatric evaluations at the request of the state agency. In July, 1986, Marsha Tracy, M.D., a psychiatrist, examined Durant. During the examination, Durant described her daily activities as including watching television, visiting with neighbors, and grocery shopping. Durant did note that the grocery bundles were difficult to carry. Dr. Tracy concluded that, although psychiatric diagnosis and prognosis were difficult, Durant suffered from an "inadequate personality." Durant's next examination was in September, 1986, by a psychologist, Eric L. Brown. In this examination, Durant stated that she suffered from insomnia associated with her preoccupation of finding her son, whom she has not seen in thirty years. Durant also noted that she prepared her own meals, went for occasional walks, sometimes took public transportation to downtown Boston, and was able to do some light dusting and housework. She further stated that standing for long periods caused back pain. Brown reported that Durant's performance on a Bender Gestalt test was suggestive of mild long-standing organic impairment, consistent with her borderline-to-low-average intelligence. He diagnosed Durant as having dysthymic disorder.[1]

1. In *Perez Torres v. Secretary of Health and Human Services*, 890 F.2d 1251, 1254–55 (1st Cir. 1989) (per curiam), the First Circuit noted the definition of dysthymic disorder employed by the American Psychiatric Association in its Diagnostic Standards Manual:

[A] dysthymic disorder is a chronic mood disturbance involving either a depressed state or a loss of interest or pleasure in almost all usual activities and pastimes. It is a less severe condition than a major depressive episode and occupational impairment is usually mild to

On May 26, 1994, the Administrative Law Judge found after a hearing on Durant's revived first application that although Durant had, during the relevant period, suffered from some discomfort and restriction of motion due to her diagnosed ailments, the medical evidence did not demonstrate the presence of physical conditions, or a combination of physical conditions, or even a combination of physical and mental conditions, which would have qualified her as "disabled" within the meaning of Title XVI of the Social Security Act.

Durant now argues that the decision was unsupported by substantial evidence and is based upon errors of law. She claims that the Administrative Law Judge misapplied the *McDonald de minimis* standard in step 2 of the five-step evaluation process for determining disabilities, and that there is no substantial evidence that her combined physiological and psychological impairments were insufficient to render her disabled under the *de minimis* standard. Secondly, Durant claims legal error in the application of the pain standard set forth in *Avery v. Secretary of Health and Human Services*, 797 F.2d 19 (1st Cir.1986). She argues that the Administrative Law Judge ignored and misconstrued both medical and lay evidence which, she argues, require a contrary finding.

## III. DISCUSSION

### A. *Applicable Law*

 Judicial review of Social Security disability benefit determinations is limited under 42 U.S.C. § 405(g), which states that this Court is empowered to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." *See also Defosse v. Bowen*, 670 F.Supp. 1078, 1080 (D.Mass.1987) (Wolf, J.). The Court must affirm the Secretary's decision if it is supported by substantial evidence. *Da Rosa v. Secretary of Health and Human Services*, 803 F.2d 24, 26 (1st Cir.1986) (per curiam); *Lizotte v. Secretary of Health and Human Services*, 654 F.2d 127, 128 (1st Cir.1981). In

fact, this Court "must affirm the Secretary's [determination], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodriguez Pagan v. Secretary of Health and Human Services*, 819 F.2d 1, 3 (1st Cir.1987) (per curiam), *cert. denied*, 484 U.S. 1012, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 [1938]). Furthermore, the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the Secretary and not the courts to decide. *Perales*, 402 U.S. at 399, 91 S.Ct. at 1426; *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir.1981). When evidence has not been evaluated because of an error of law, however, the Secretary's decision must be set aside. *Da Rosa*, 803 F.2d at 26.

 A claimant bears the burden of establishing by credible evidence that she was disabled within the meaning of the Social Security Act. *Deblois v. Secretary of Health and Human Services*, 686 F.2d 76, 79 (1st Cir.1982). The Social Security Act defines "disability" as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C.A. § 423(d)(1)(A) (West 1991). The statute further provides:

[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substan-

moderate because of the chronic, rather than severe nature of the syndrome.

tial gainful work which exists in the national economy. . . .

*Id.* § 423(d)(2)(A). Thus, evidence of an impairment is not enough to warrant an award of benefits; there must also be evidence in the record that the impairment prevented the claimant from engaging in any substantial activity. *McDonald v. Secretary of Health and Human Services,* 795 F.2d 1118, 1120 (1st Cir.1986).

Social Security Administration regulations ("the Regulations") have reduced the question of whether a claimant is disabled to a five-step analysis. The first step is determining whether the claimant is engaged (employed) in a substantially gainful activity. If so, then she is automatically considered not disabled. The second step ("Step 2") considers whether the claimant has a severe impairment or combination of impairments, mental, physical or both, "which significantly limit[s] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (1994). If the claimant does not have an impairment to this degree, she is automatically considered not disabled. The third step entails finding whether the claimant's impairments are contained in Appendix 1 to the Regulations. If so, the claimant is automatically found disabled. However, if the claimant survives Step 2, but her disability does not appear in Appendix 1, she moves on to the fourth step. Here the question is whether the claimant's impairment prevented her from performing past work. If not, then she is automatically considered not disabled. If so, then she moves on to the fifth step, which considers whether the impairment prevents the claimant from performing other work found in the economy. If so, then she is finally considered disabled. *See generally* 20 C.F.R. § 404.1520 (1994); *see also Goodermote v. Secretary of Health and Human Services,* 690 F.2d 5, 6–7 (1st Cir.1982).

### B. *The Plaintiff's Arguments*

Durant contends that the findings of the Administrative Law Judge are not predicated upon substantial evidence, and further that errors of law permeate his determination. Specifically, Durant claims the Administra-

tive Law Judge misapplied the *McDonald de minimis* standard in Step 2 of the severity analysis and also misapplied the *Avery* pain standard. Because this Court finds reversible error in the Step 2 severity analysis determination, it need not address the plaintiff's arguments pertaining to the pain standard.

### 1. The *McDonald de minimis* standard

To begin, Durant claims that the finding in Step 2 of the analysis—that her impairments did not, singly or in combination, significantly affect her ability to perform basic work-related functions—is a misapplication of the *McDonald de minimis* standard and unsupported by substantial evidence.

The Secretary adopted the *de minimis* standard for the Step 2 severity requirement in Social Security Ruling 85–28 (October 1985). Subsequent to that ruling, the First Circuit, in its *McDonald* decision, required the Secretary to reopen all claims which had previously been eliminated in the Step 2 analysis. The *de minimis* standard is designed to do no more than ferret out groundless claims, and under the standard, a non-severe finding is warranted only where " 'medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered.' " *McDonald v. Secretary of Health and Human Services,* 795 F.2d at 1124 (quoting Social Security Ruling 85–28). Application of the standard cannot result in the denial of benefits where an applicant "either cannot perform his or her own past work, or cannot perform other substantial gainful activity." *Id.* at 1125. Furthermore, if there is any uncertainty in determining the effect of an impairment or combination of impairments, the evaluation process should not end with Step 2. *Id.*

In the case at bar, the Administrative Law Judge found that Durant retained the "residual functional capacity for her past work as a homemaker." (A.L.J. Decision at 6). If correct, such a finding automatically

disqualifies Durant from disabled status under the *de minimis* standard, as it follows that Durant's impairments were of such a minimal nature that they could never prevent her from working. Thus, by finding that Durant was completely capable of performing past relevant work, the Administrative Law Judge was compelled, even under the liberal *de minimis* standard, to rule that Durant was not disabled according to the Step 2 severity requirement.

### 2. Substantial Evidence

Determining that the Administrative Law Judge properly applied the *de minimis* standard to his findings, however, does not bring the analysis to an end. This Court must next determine whether substantial evidence supports the ultimate finding, and whether such finding is free of legal error.

Durant focuses her argument in this context on the psychologist's comment that Durant's Bender performance is "suggestive of mild **long-standing** organic impairment, consistent with her borderline to low average intelligence" and that she functions "in the borderline to low average range of intelligence, and this condition is **long-standing**" (emphasis added). This comment is inconsistent with the finding of the Administrative Law Judge that "neither the psychiatrist nor the psychologist gave **any** indication that **any** impairing emotional condition had been present during the period relevant to this decision." (A.L.J. Decision at 3) (emphasis added). Upon this weak reed Durant contends that because it can be inferred that such a condition did indeed exist during the relevant time frame, a mere two years earlier, the decision of the Administrative Law Judge, failing to factor in this inference, is not supported by substantial evidence.

▆▆▆▆ An Administrate Law Judge, while permitted to make credibility determinations and to resolve conflicting evidence, is not entitled to ignore uncontroverted medical reports. *Suarez v. Secretary of Health and Human Services*, 740 F.2d 1 (1st Cir.1984) (per curiam). In finding that "[n]either the

psychiatrist nor the psychologist gave **any** indication [of] **any** impairing emotional condition" (A.L.J. Decision at 3), the Administrative Law Judge appears to have done just that. These statements demonstrate that the Step 2 analysis failed to include consideration of Durant's borderline to low average intelligence, or even her mild organic impairment. This is legal error. Because the Administrative Law Judge excluded evidence of medically diagnosed long-term organic impairment and long-term borderline to low average intelligence, this Court, as matter of law, cannot conclude that he would have made the same determination had such evidence been properly considered.

Social Security Ruling 85–28 confirms this conclusion, as it states:

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step.

*McDonald*, 795 F.2d at 1125 (quoting Social Security Ruling 85–28). The Administrative Law Judge here neither considered the effects of the mental impairments alluded to by the psychologist, nor determined clearly the effect of those impairments. Accordingly, as dictated by Ruling 85–28, Durant's evaluation ended prematurely. The failure to consider uncontroverted medical evidence in the determination that Durant's impairments, singly or in combination, did not significantly affect her ability to perform basic work-related functions compels the conclusion that the determination of the Administrative Law Judge is not supported by substantial evidence. *See Suarez*, 740 F.2d at 1; *Da Rosa v. Secretary of Health and Human Services*, 803 F.2d 24, 26 (1st Cir.1986). Pursuant to 42 U.S.C. § 405(g),[2] therefore, this Court vacates the Secretary's decision and remands for further consideration in accordance with this opinion.

---

**2.** "The court shall have power to enter, upon the pleading and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West Supp.1993).

## C. *Costs and attorneys' fees*

 Since Durant is here proceeding *in forma pauperis,* there exists no issue concerning court costs. On the subject of attorneys' fees, this Court must rely on 42 U.S.C. § 406, the Equal Access to Justice Act, 28 U.S.C. § 2412, and the Supreme Court decisions of *Melkonyan v. Sullivan,* 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991) and *Shalala v. Schaefer,* —— U.S. ——, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993). Under the statutes, the prevailing party in a court action involving the Social Security Administration may petition the court for attorneys' fees. *See* 42 U.S.C.A. § 406(b) (West 1991); 28 U.S.C.A. § 2412(d) (West 1994).

### 1. 42 U.S.C. § 406(b) [3]

 Section 406(b) grants no authority to recover fees incurred before the Social Security Administration. Rather, the Secretary has the power to award attorney fees for services rendered in that forum. *Gardner v. Menendez,* 373 F.2d 488 (1st Cir.1967); *Morris v. Social Security Administration,* 689 F.2d 495 (4th Cir.1982) (per curiam). The question remains, however, whether this Court has the authority under 42 U.S.C. 406 to award attorney fees to the plaintiff's attorney for work performed in this court, where there is, as yet, no judgment specifically awarding benefits to the claimant. Although section 406(b) does not speak to this issue, a handful of courts have answered the question in the affirmative. *See Conner v. Gardner,* 381 F.2d 497 (4th Cir.1967) (attorney may be awarded fees for substantial work done before the district court even though any benefits awarded would come from an administrative decision); *Vazquez v. Secretary of Health and Human Services,* 608 F.Supp. 346 (D.P.R.1985) (attorneys' fees for services rendered in district court allowable where claimant obtains a remand which ultimately results in award of benefits). The *Vazquez* court reasoned that an attorney has no other way to collect fees upon a remand. Following the Supreme Court decisions in *Melkonyan v. Sullivan,* 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991) and *Shalala v. Schaefer,* —— U.S. ——, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), this situation no longer exists. Therefore, in the absence of controlling First Circuit precedent, this Court declines to assume the power in the context of its remand to award attorneys' fees under section 406(b).

### 2. Equal Access to Justice Act

 In *Melkonyan,* the Court held that an administrative decision does not constitute a "final judgment" for the purpose of awarding attorneys' fees under the EAJA. *Melkonyan,* 501 U.S. at 95, 111 S.Ct. at 2161. A party receiving a favorable decision may apply for attorneys' fees under the EAJA only if that decision resulted from court proceedings. The Supreme Court's decision in *Shalala v. Schaefer,* —— U.S. ——, ——, 113 S.Ct. 2625, 2629, 125 L.Ed.2d 239 (1993) further clarified the definition of a "final judgment" under EAJA guidelines, stating a "[Section 405(g)] judgment fits squarely within the term 'final judgment' as used in section 2412(d), which is defined as 'a judgment that is final and not appealable.' " [4] Accordingly, the remand by this Court represents a "final judgment" under the EAJA. Durant may now file an application for EAJA fees within 30 days of this order. 28 U.S.C.A. § 2412(d)(1)(B) (West 1994). Durant may not recover EAJA fees incurred during any administrative proceedings held subsequent to the remand, however, as this Court no longer retains jurisdiction over the

---

**3.** The statute provides in relevant part:
Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past due benefits to which the claimant is entitled by reason of such judgment, and the Secretary may, notwithstanding the provisions of section 405(i) of this title,
certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits.
42 U.S.C.A. § 406(b)(1) (West 1991).

**4.** The *Schaefer* decision renders the reasoning in *Vazquez* moot. Now that a remand is considered a "final judgment" under 28 U.S.C.A. § 2412(d), a prevailing party may petition for EAJA fees pursuant to such a ruling.

case.[5] *Schaefer*, 113 S.Ct. at 2630–31 (distinguishing *Sullivan v. Hudson*, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 [1989]).

## IV. CONCLUSION

For the foregoing reasons, the decision of the Administrative Law Judge is REVERSED and the case is REMANDED for further hearing and decision consistent with this opinion. In particular, the Secretary must reevaluate the record and consider the uncontroverted medical evidence before reaching a conclusion as to the plaintiff's ability to work. At this juncture, the Court denies attorney fees without prejudice to an application within thirty days of this order.

5. A remand under 42 U.S.C.A. § 405(g) "terminate[s] the civil action" and divests the district court of jurisdiction over the cause. *Sullivan v. Finkelstein*, 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). In contrast, a court would "retain[ ] jurisdiction over a remand in accord with sentence six [of the statute]." *Allbritton v. Secretary of Health and Human Services*, 796 F.Supp. 35, 38 (D.Mass.1992) (Freedman, J.); *see also Schaefer*, —— U.S. at —— – ——, 113 S.Ct. at 2628–30.