Sandra (Watson) WELLS, Plaintiff,

v.

**Jo Anne B. BARNHART, Commissioner Social Security Administration, Defendant.**

**No. CIV.A. 02–11798–WGY.**

United States District Court, D. Massachusetts.

June 19, 2003.

---

Margaret G. Barmack, Barmack & Boggs, Lynn, MA, for Sandra Watson Wells, Plaintiff.

Anne G. Depew, United States Attorney's Office, John Joseph Moakley Federal Courthouse, Boston, MA, for Larry G. Massanari, Defendant.

Anita Johnson, United States Attorney's Office, John Joseph Moakley Federal Courthouse, Boston, MA, for Jo Anne Bamhart, Defendant.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

This is an action under sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C §§ 405(g) and 1383(c)(3). The plaintiff, Sandra Wells[1] ("Wells"), seeks declaratory relief and judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits and for supplemental security income benefits. Wells argues that the Commissioner's decision is legally erroneous and not based on substantial evidence. She therefore asks this Court either to reverse and order the Commissioner to deliver her benefits or to remand her case to the Commissioner for further proceedings consistent with the findings of this Court. She also seeks reasonable attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and other relief that the Court deems appropriate.

## I. BACKGROUND

### A. Factual Background

Wells was born on July 16, 1962, and completed high school through the eleventh grade. R. at 29, 31. Between 1983 and 1996, Wells held several jobs, working off and on as a waitress and a shipping and receiving clerk for several different employers. *Id.* at 40–41. During 1995, she worked as a shipping and receiving clerk in a machine shop. *Id.* at 41. She worked as a waitress from January 1996 until August 1996. *Id.* at 38–39.

In June of 1996, Wells began experiencing abdominal pain, nausea, and diarrhea,

---

1. The plaintiff, née Sandra Watson, married David Wells subsequent to the administrative proceedings that give rise to her complaint. She now uses the surname Wells. Pl.'s Mem. in Supp. of Mot. for J. on the Pleadings ("Pl.'s Mem.") [Docket. No. 19] at 1 n. 2.

which she claims became so severe as to prevent her from working by August of 1996. *Id.* at 36, 42.

## B. Medical Evidence

In December of 1996, Wells saw Dr. David Lebwohl ("Dr. Lebwohl"), complaining of pain that interfered with her work. *Id.* at 197. Dr. Lebwohl noted that Wells had only a single kidney and that she had also had a hysterectomy as a result of endometriosis. *Id.* He diagnosed her with probable chronic gastritis/esophagitis. *Id.*

On December 27, 1996, Wells saw another doctor, internist Carl Johnson ("Dr. Johnson"). At this visit, Wells complained of pain and intermittent diarrhea, nausea, and vomiting that dated back to June. *Id.* at 192. Dr. Johnson could not find a cause for the symptoms and thus ordered a diagnostic work-up to get to the root of her complaints. *Id.* At this visit, Dr. Johnson filled out a temporary disability form for Wells. *Id.*

On January 10, 1997, Wells returned to Dr. Johnson again complaining of cramps, intermittent abdominal discomfort after eating, and alternating constipation and diarrhea. *Id.* Dr. Johnson diagnosed her with "probable IBS [irritable bowel syndrome]" and noted that there was a "question of adhesions." *Id.* at 190. He prescribed the drug Levsin for her abdominal cramps.

On January 23, 1997, Wells saw a gastroenterologist, Richard Einhorn ("Dr. Einhorn"), who examined her, concluded that "statistically the likeliest diagnosis is that of significant irritable bowel syndrome," and ordered further tests. *Id.* at 186. Dr. Einhorn suggested that Wells continue taking Levsin as needed and stated that he would provide further recommendations depending upon the results of her colonoscopy. *Id.*

Dr. Einhorn subsequently performed a colonoscopy on Wells, which suggested "perhaps mild segmental colitis" but was otherwise negative. *Id.* at 185. Dr. Einhorn's notes reflect that he suspected Wells did not have segmental colitis, but instead likely had visceral hypersensitivity caused by significant irritable bowel syndrome. *Id.* Based upon this finding, Dr. Einhorn altered Wells' medications. *Id.*

In April of 1997, Wells underwent an upper GI series, which was negative and demonstrated an "unremarkable bowel gas pattern." *Id.* at 183. On May 29, 1997, Wells saw Dr. Einhorn again, complaining of rectal bleeding, constipation, and abdominal cramping. *Id.* at 181. Dr. Einhorn again changed her medications on this visit, noting that "[g]iven the clinical picture, this is most significant with rather severe irritable bowel syndrome." *Id.*

In June of 1997, Wells requested that Dr. Johnson refer her to another doctor for a second opinion, which he did, but Wells did not keep the appointment. *Id.* at 177, 180. In September of 1997, Dr. Johnson changed Wells' medications for her irritable bowel syndrome. *Id.* at 177. In December of 1997, Dr. Johnson scheduled Wells for an abdominal CT scan to determine whether she had adhesions. *Id.* at 175. The CT scan showed no abnormalities and Dr. Johnson referred her to a surgeon, Dr. Roger House, to rule out intestinal adhesions as the source of her pain. *Id.* at 174. On January 21, 1998, Dr. House performed a laparoscopic adhesiolysis and found a "surprising" number of "very dense adhesions throughout the lower half of the abdomen." *Id.* at 172. In his post-operative report, Dr. House opined that Wells probably had segmental colitis—a "subset of Crohn's colitis"—and that he doubted the symptoms were solely caused by irritable bowel syndrome. *Id.* at 167. Dr. House described Wells as

"fully fit to return to work" as of February 2, 1998. *Id.* at 227.

Wells felt "generally better" after the surgery but was advised by Dr. Johnson to "take it easy" through February 1998 because of the extensive nature of the adhesions. *Id.* at 171. By February 23, 1998, Wells was again complaining of abdominal pain, nausea, diarrhea, and vomiting. *Id.* at 170. Dr. Johnson prescribed various medications for her symptoms. *Id.*

On October 7, 1998, Dr. Johnson wrote a letter in which he stated that Wells "is unable to work due to chronic abdominal pain and recurrent bouts of nausea, vomiting, and diarrhea.... At this stage she requires pain medicines for symptom control that may impair her fine motor control, coordination and judgement [sic] and this further prevents her from performing gainful employment." *Id.* at 241. On October 27, 1998, Dr. Johnson filled out a "Medical Assessment of Ability to do Work–Related Activities" form for Wells, on which he wrote that Wells' "chronic abdominal pain increases with straining," and that she could frequently carry up to 15 pounds; could stand, walk, and sit without impairment; could occasionally climb, balance, stoop, crouch, kneel, and crawl, and that she had unlimited ability to reach, feel, push/pull, see, hear, and speak, but limited ability to bend. *Id.* at 249–250.

### C. Procedural History

Wells first applied for disability insurance benefits and supplemental security income payments on December 5, 1996. R. at 14. The Commissioner denied both claims and Wells did not file a request for consideration. *Id.* Wells filed her current applications for disability insurance benefits and supplemental income payments on May 23, 1997, alleging disability as of August 15, 1996. *Id.* at 14. The Commissioner initially denied Wells' claim and upon reconsideration denied it again. *Id.* at 14.

At Wells' request, an administrative law judge heard the case on October 7, 1998. After considering the case de novo, the administrative law judge held, on March 9, 1999, that Wells was not disabled within the meaning of the Social Security Act. *Id.* at 14–23. On July 5, 2002, the Appeals Council subsequently denied Wells' request for review of the decision of the administrative law judge. *Id.* at 6–7. The decision of the administrative law judge, therefore, became the final decision of the Commissioner with respect to Wells' claim. *Id.* Wells subsequently filed a complaint in this Court [Docket No. 1], asking the Court to review and set aside the Commissioner's decision. Wells here moves for judgment on the pleadings [Docket No. 9].

## II. DISCUSSION

### A. Standard of Review

This Court's review of a Social Security disability benefit determination is limited by section 205(g) of the Social Security Act, which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence exists when a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support the Commissioner's conclusion." *Musto v. Halter,* 135 F.Supp.2d 220, 225 (D.Mass. 2001) (quoting *Ortiz v. Sec'y of Health & Human Serv.,* 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted)). The Commissioner's duty is to make determinations as to credibility and draw inferences from the record of evidence. *Id.* Therefore, this Court must affirm the Commissioner's decision "even if the record arguably could justify a different conclusion, so long as it is supported by sub-

stantial evidence." *Rodriguez Pagan v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir.1987). The administrative law judge's findings of fact are not conclusive, however, when they are "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir.1999).

## B. Social Security Disability Standard and the Administrative Law Judge's Decision

■ The Social Security Act provides that:

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2)(A). "Thus, evidence of an impairment is not enough to warrant an award of benefits; there must also be evidence in the record that the impairment prevented the claimant from engaging in any substantial activity." *Durant v. Chater,* 906 F.Supp. 706, 711 (D.Mass.1995).

The Social Security Administration has promulgated regulations that have reduced this determination of disability to a five-step analysis. The administrative law judge must follow the sequential evaluation process set forth in sections 404.1520 and 416.920 of Title 20 of the Code of Federal Regulations to determine:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from performing past relevant work; and

(5) whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520; *accord id.* § 416.920(a).

The First Circuit has delineated the protocol for application of this five-step process. *See Goodermote v. Sec'y of Health & Human Servs.,* 690 F.2d 5, 6–7 (1st Cir.1982). At step one, the Commissioner considers whether the claimant is currently employed; if so, the claimant is automatically considered not disabled and the process comes to an end. *Id.* at 6. If the claimant is not currently employed, the Commissioner then proceeds to step two and considers whether the claimant has a severe impairment. *Id.* A severe impairment is defined as an impairment "which significantly limits his or her physical or mental capacity to perform. basic work-related functions." *Id.* If the Commissioner determines that the claimant does not have an impairment of this severity, the process comes to an end; otherwise, the Commissioner proceeds to step three. *Id.* At step three, the Commissioner determines whether the claimant has an impairment equivalent to a specific list of impairments contained in Appendix 1 to the Social Security Administration's regulations. *Id.* If so, the claimant is automatically found disabled and the process ends. *Id.* If not, the Commissioner goes on to step four and asks whether the claimant's impairment "prevent[s] him from performing work of the sort he has done in the past." *Id.* at 6–7. If not, the claimant is found not disabled and the process ends. *Id.* at 7. If so, the Commissioner moves on to step five and considers whether the "claimant's impairment prevent[s] him from performing other work of the sort found in the economy." *Id.* If so, the

claimant is found disabled; if not, the claimant is found not disabled. *Id.* Importantly, the claimant bears the burden of proof at step four, but the Commissioner bears the burden of proof at step five. *Id.; see also Perkins v. Barnhart,* No. CIV.A.02–30101–KPN, 266 F.Supp.2d 205–06, 2003 WL 21272151 at *6 (D.Mass. May 20, 2003) (Neiman, M.J.). This process is the same for both social security disability insurance benefits and for social security supplemental income payments. *See, e.g., Bazile v. Apfel,* 113 F.Supp.2d 181, 185 (D.Mass.2000).

In the instant case, the administrative law judge found, with respect to step one, that Wells had not engaged in substantial gainful activity since the onset of her symptoms. R. at 16. The administrative law judge then proceeded to step two, and found that Wells had an impairment that was severe. *Id.* The administrative law judge then moved to step three, where he concluded that Wells' impairment was not so severe as to meet or equal the criteria of a listed impairment. *Id.* at 16–17. The administrative law judge then moved to step four and determined that Wells lacked the residual functional capacity to return to any of her previous work. *Id.* at 20. As such, the administrative law judge then proceeded to step five to consider whether Wells nonetheless had the residual functional capacity to perform work that exists in the economy. *Id.* Here, the administrative law judge concluded that Wells did retain "the capacity to make an adjustment to work which exists in significant numbers in the national economy," stating that "such work includes employment as a cashier, a billing clerk, and a shipping checker." *Id.* at 23. The administrative law judge thus concluded that

Wells did not suffer from a disability and was not entitled to benefits. *Id.*

## C. Wells' Challenge to the Administrative Law Judge's Decision

Wells argues that the administrative law judge's decision was not supported by substantial evidence, was based upon errors of law, and was in violation of the Social Security Act.[2] Compl. ¶ 19. Wells' challenge essentially goes to the administrative law judge's determination at step five that she retained the residual functional capacity to perform work that exists in substantial numbers in the national economy (i.e., some types of sedentary to light work). Specifically, Wells argues that the administrative law judge failed to give adequate weight to the evidence regarding her pain and the adverse side effects of her pain medications, and that as a result, the administrative law judge reached an erroneous conclusion about Wells' ability to work.

### 1. Assessment of Wells' pain and pain medications

The regulations establish that in cases such as Wells'—in which a claimant has a medically-determinable severe physical impairment that is of less severity than the impairments described in the appendix, such that the administrative law judge proceeds to steps four and five—"the administrative law judge must consider the impact of related symptoms, including pain, on the claimant's residual functional capacity." *Bazile,* 113 F.Supp.2d at 185 (citing 20 C.F.R. § 404.1529(d)(4)). This determination of the claimant's pain is guided by *Avery v. Sec'y of Health & Human Servs.,* 797 F.2d 19 (1st Cir.1986), in which the

---

2. Wells also included the unsupported allegation in her complaint that the decision violated the due process and equal protection clauses of the United States Constitution,

Compl. ¶ 19, although she did not pursue that argument in her memorandum in support of the instant motion for judgment on the pleadings.

First Circuit established that "complaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir.1989) (interpreting *Avery*, 797 F.2d at 21). Specifically, *Avery* instructs the administrative law judge to consider six factors in evaluating a claimant's subjective allegations of pain:

(1) The nature, location, onset, durations, frequency, radiation, and intensity of any pain;

(2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3) *Type, dosage, effectiveness, and adverse side-effects of any pain medication;*

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

*Avery*, 797 F.2d at 29 (emphasis added).

■ A finding that a claimant is not credible "must be supported by substantial evidence and the administrative law judge must make specific findings as to the relevant evidence he considered in determining to disbelieve the claimant." *Da Rosa v. Sec'y of Health and Human Servs.*, 803 F.2d 24 (1st Cir.1986). Wells argues that the administrative law judge's decision fails to meet this standard, particularly his discussion of two of the *Avery* factors: her daily life activities and the adverse effects of her pain medications. Although the Court rejects the first contention, it agrees with the second.

The administrative law judge's conclusion that Wells' complaints of pain were exaggerated was largely based on his assessment that Wells was not entirely credible. This finding apparently resulted from the administrative law judge's review of Wells' daily activities. Most significantly, the administrative law judge noted that Wells—despite an alleged pain level of "8" on a scale of "1" to "10"—was performing a broad range of daily activities, including caring for a young child for four hours a day, cooking, shopping, driving, doing housework, socializing, and walking upstairs and downstairs while doing laundry. R. at 19. The administrative law judge also indicated that he harbored doubts about Wells' credibility due to inconsistencies in the record regarding whether she had worked since the onset of her disability. *Id.* at 17. The administrative law judge concluded that "[t]hough the claimant has endured significant pain, there is substantial evidence that her subjective reports are exaggerated." *Id.* at 19.

Although the administrative law judge may indeed have characterized Wells' daily activities in a way that put the most positive spin on them, as Wells argues, the record appears to be fully developed on this point. For instance, the record indicates that Wells plays with a five-year old child for an hour and a half to two hours in the morning before he goes to school, sometimes makes him breakfast, and spends time caring for him after school. *Id.* at 52–53. In addition, the record indicates that Wells drives approximately three times a week, albeit only about one mile and a quarter each time. *Id.* at 51. In her colloquy with the administrative law judge, Wells further described herself as able to (1) get washed and dressed each morning without assistance; (2) do light housework each morning, such as wiping down the table and washing dishes; (3) shop once a month; (4) go on two twenty-minute walks each day around her yard; and (5) walk up and down stairs when she does laundry. *Id.* at 51–54.

■ The administrative law judge's questioning as to Wells' daily activities ap-

pears to be thorough and is not so flawed as to warrant remand. *See, e.g., Musto v. Halter,* 135 F.Supp.2d 220, 228 (holding that despite an underdeveloped record and possible mischaracterizations of daily activities, the discrepancies in fact did not justify a finding that the credibility determination of the administrative law judge was not supported by substantial evidence). Moreover, the administrative law judge's decision included specific findings, with reference to Wells' daily activities, as to why he doubted Wells' credibility in regard to the severity of her pain. The Court thus disagrees that the administrative law judge's assessments with respect to Wells' credibility and daily activities were not supported by substantial evidence.

■ The Court rules, however, that the administrative law judge's assessment of the impact of Wells' pain was flawed in one important respect: the administrative law judge failed to develop the record adequately with regard to the adverse effect of Wells' pain medications—which, as noted above, is one of factors in the *Avery* analysis. Although the administrative law judge began questioning Wells about this *Avery* factor, the transcript does not make clear which of Wells' medications the administrative law judge was attempting to inquire about, or what specific information he was attempting to elicit:

Q: On a zero to ten scale, what would your pain be?

A: Eight.

Q: Eight? Is that with or without your medications?

A: That's with my medications.

Q: What is it without your medications?

A: Ten.

. . .

Q: Are you having the pain right now?

A: Yes.

Q: On that zero to ten scale, what is it right now?

A: It's about a six.

Q: Why is it lower?

A: I took my medication this morning for pain.

Q: Well, on that zero to ten scale when you take your medication, what does it reduce the pain to?

A: Being a—about six.

Q: Are you able to concentrate?

A: No.

Q: You are not able to concentrate now?

A: Yes.

Q: So, when you take your medications, are you able to concentrate?

A: I'd be able to relax and concentrate and calm down.

R. at 48–49.

This exchange demonstrates that the administrative law judge was aware that Wells has a medication regimen, but that he did not specifically inquire as to which medications she took, how often she took them, and what the side effects of those medications were. Most importantly, the administrative law judge did not explore the effect of Wells' medication on her ability to concentrate, despite her ambiguous answers on the subject (i.e., Wells first stated that she had taken her medication that morning and was unable to concentrate, but stated a moment later that when she took her medications, she was "able to relax and concentrate and calm down."). The administrative law judge's failure to probe this issue further is particularly problematic because Wells' treating internist, Dr. Johnson, had specifically stated that Wells requires pain medications that "may impair her fine motor control, coordination and judgement [sic]." *Id.* at 241. Similar-

ly, Wells herself had stated in a disability report that five of her daily medications (Asacol, Dicyclomine, Hyoscyamine, Doxepin, and Fiorinal) caused drowsiness, which she referred to as "drowness." *Id.* at 135. Accordingly, the Court rules that the administrative law judge failed adequately to develop the record with regard to the side effects of Wells' pain medications. This, in turn, has implications for the administrative law judge's assessment of Wells' residual functional capacity to perform work, as discussed below.

### 2. Wells' Ability to Perform Substantial Gainful Work

Once the administrative law judge concluded at step four that Wells was unable to return to her past work, the burden shifted to the Commissioner at step five to establish that there was a significant number of jobs in the national economy that Wells could perform. In making this assessment, the administrative law judge rejected the testimony of Wells' treating physician that she was unable to work because of both chronic pain and the effects the pain medications had on her ability to concentrate, R. at 241, and instead looked to the testimony of a vocational expert who stated that Wells could perform a variety of sedentary and some light, unskilled jobs[3] that exist in significant numbers in the economy. R. at 69–70. The relative weights that the administrative law judge gave to each of these opinions is problematic because of the record's inadequate development with respect to the effect of Wells' pain medications.

The Court begins with the administrative law judge's analysis of the opinion of Wells' treating physician. In this regard, the administrative law judge acknowledged that Wells' treating physician, Dr. Johnson, had written a letter on October 7, 1998, stating that Wells was unable to work. R. at 18. The administrative law judge noted, however, that in his subsequent assessment of October 27, 1998, Dr. Johnson had stated that Wells could stand, walk, and sit without limitation, could frequently carry up to 15 pounds and occasionally carry up to 25 pounds, and that she could occasionally climb, balance, stoop, crouch, kneel, and crawl. *Id.* The administrative law judge thus concluded that "[t]he claimant's treating internist's views are not persuasive, as his view that the claimant is 'unable to work' in [sic] not supported by his own assessment." *Id.* at 19. The administrative law judge further noted that Dr. House, the surgeon who had performed laparascopic adhesiolysis on Wells, had described her as fit to return to work as of February 1998. *Id.*

■ Under the regulations, more weight is generally given to opinions from a claimant's treating sources, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture" of the claimant's medical condition. 20 C.F.R. §§ 404.1527(d)(2). The administrative law judge is not, however, "obligated automatically to accept [the treating physician's] conclusions." *Guyton v. Apfel,* 20 F.Supp.2d 156, 167 (D.Mass.1998). Rather, controlling weight is given if the administrative law judge finds that the "treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. §§ 404.1527(d)(2). The regulations further

---

**3.** Based on a hypothetical provided by the administrative law judge, the vocational expert testified that Wells could work as a cash-ier, a billing clerk, and a shipping clerk. R. at 21, 70.

provide that the administrative law judge "will always give good reasons ... for the weight [he] give[s] your treating source's opinion." *Id.*

■ The Court's review of the administrative law judge's decision indicates that the administrative law judge took into account Dr. Johnson's opinions but found that those views were not supported by the doctor's own assessments. To the extent that the administrative law judge was rejecting Dr. Johnson's conclusion that Wells was unable to work due to her chronic pain, the Court rules that this determination was supported by substantial evidence—namely, the evidence from both Dr. Johnson and Wells herself about her abilities to engage in some physical activity. The administrative law judge, however, did not provide specific reasons for his rejection of Dr. Johnson's conclusion that the side effects of Wells' pain medications "further prevent[ ] her from performing gainful employment." R. at 241.

Similarly, in his colloquy with the vocational expert, the administrative law judge instructed the vocational expert to assume—without ever explaining the basis for this assumption—that Wells "is further limited within the light and sedentary ranges of work by her pain and the affect of her medications and other problems which cause a *minor to moderate interference* in her ability to concentrate. Not to the extent it would interfere with the performance of routine, repetitive tasks, or normal work functions." R. at 69 (emphasis added). Based on this assumption, the vocational expert determined that Wells would have access to sedentary and some light, unskilled entry level occupations such as cashier, billing clerk, and shipping clerk. *Id.* at 69–70.

The First Circuit has explained that "in order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities. To guarantee that correspondence, the Administrative Law Judge must both clarify [those medical] outputs (deciding what testimony will be credited and resolving ambiguities) and accurately transmit the clarified output to the expert in the form of assumptions." *Arocho v. Sec'y of Health & Human Servs.,* 670 F.2d 374, 375 (1st Cir.1982).

■ In this case, the clarification and transmission of the medical output to the vocational expert was inadequate because, as discussed above, the administrative law judge failed to explore sufficiently whether Wells' medications impeded her ability to concentrate. If the administrative law judge was indeed concluding that the statements of Dr. Johnson and Wells herself with respect to the side effects of her pain medication did not deserve to be credited, he should have clarified the basis for this decision. Instead, the administrative law judge conclusorily instructed the vocational expert to assume that those side effects were minor to moderate. The vocational expert's response, therefore, was based on an assumption that may have been unjustified. In fact, when subsequently asked to assume everything Wells said was true, the vocational expert found she would not be able to perform any work in the labor market. *Id.* at 70. Nonetheless, the administrative law judge simply stated in his decision that "[t]he vocational expert testified that assuming Ms. Watson's specific work restrictions, she is capable of making a vocational adjustment to work as a cashier, a billing clerk, and a shipping checker." *Id.* at 8.

Because the administrative law judge did not provide any basis for his apparent conclusion—inconsistent with the opinion

of Wells' treating physician—that the effect of Wells' pain medications on her ability to concentrate was merely minor to moderate, and because the vocational expert's opinion upon which the administrative law judge relied was based on this assumption, this Court concludes that the administrative law judge's decision regarding Wells' ability to work was not supported by substantial evidence. Accordingly, the Commissioner, as of yet, has not met the burden of establishing that there are a significant number of jobs in the national economy that Wells can perform. Thus, this Court vacates the decision of the administrative law judge and remands to the Commissioner for proceedings consistent with this opinion and guidelines expounded in *Avery*. "When evidence has not been evaluated because of an error of law, the [Commissioner's] decision must be set aside." *Bazile*, 113 F.Supp.2d at 190. After such proper inquiry, the administrative law judge may again find that Wells' allegations concerning the effect of her pain medications on her ability to concentrate are not credible, provided that the judge sets forth specific findings as to the relevant evidence he considered in determining to disbelieve Wells and her treating physician regarding the effect of her medications.

### D. Reasonable Attorney's Fees

Wells seeks to recover her attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (the "Act"). The Act states that a "court shall award to a prevailing party ... fees and other expenses ... including proceedings for judicial review of agency action, brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Act further provides that a party seeking an award of attorneys' fees shall submit an application to the court within thirty days of final judgment of the action. *Id.* § 2412(d)(1)(B).

▮ Although an administrative decision does not constitute a "final judgment" for the purposes of awarding attorneys' fees under the Act, *Melkonyan v. Sullivan*, 501 U.S. 89, 95, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1981), the remand order of a district court under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), "fits squarely within the term 'final judgment' as used in section 2412(d)." *Shalala v. Schaefer*, 509 U.S. 292, 298, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993). Therefore, Wells may file an application for attorneys' fees under the Act within thirty days of this order. She may not, however, recover fees incurred as a result of future administrative proceedings because this Court will not retain jurisdiction over this case. *Id.* at 299, 113 S.Ct. 2625; *see also Musto*, 135 F.Supp.2d at 234.

## III. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion. At this point, the Court denies attorneys' fees without prejudice to an application for such fees within thirty days of this order.

SO ORDERED.