ENTERED · NOV 0 5 2014

STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-13-14

AND-MGK - 10-24-14

REBECCA L. DROUIN,

    Petitioner

ORDER

RECEIVED & FILED
OCT 2 4 2014
ANDROSCOGGIN
SUPERIOR COURT

v.

COMMISSIONER, MAINE DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

    Respondent

This matter is before the court on Petitioner Rebecca L. Drouin's Rule 80C appeal of the Decision of the Maine Department of Health and Human Services ("DHHS") finding that Ms. Drouin is ineligible for MaineCare benefits based upon disability. Pursuant to 5 M.R.S. § 11001 et seq., Ms. Drouin is asking that the court reverse the decision made by DHHS. DHHS has opposed Ms. Drouin's Appeal. The court held a hearing on this matter, and has reviewed the record as well as the filings from both parties. For the foregoing reasons, the court vacates the Respondent's Decision.

I. Factual and Procedural Background

The following facts are gathered from the record on appeal:

Ms. Drouin is 40-years-old and has been diagnosed with late-stage liver disease. As a result of the late stage liver disease, she suffers from chronic fatigue, body aches, mood instability and hair loss. She has also alleged problems with memory and concentration. As a result of her condition, Ms. Drouin cannot lift heavy objects, she reports that she naps at least once daily, and according to her doctor, she requires frequent breaks.

decision unsupported." *Id.* "Judges may not substitute their judgment for that of the agency merely because the evidence could give rise to more than one result." *Gulick v. Bd. of Envtl. Prot.,* 452 A.2d 1202, 1209 (Me. 1982).

The court must give great deference to an agency's construction of a statute it is charged with administering. *Rangeley Crossroads Coal.,* 2008 ME 115, ¶ 10, 955 A.2d 223. "A court will 'not vacate an agency's decision unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or an error of law; or is unsupported by the evidence in the record.'" *Kroeger v. Dep't of Environmental Prot.,* 2005 ME 50, ¶ 7, 870 A.2d 566 (quoted in Alexander, *Maine Appellate Practice* § 452 at 312 (4th ed. 2013)); *see also* 5 M.R.S.A. § 11007(4)(c).

Where there have been multiple levels of administrative decision-making, the most recent decision will be the one subject to Superior Court review, if the most recent decision-maker had *de novo* capacity and/or the authority to conduct additional fact-finding. *See* Alexander, *Maine Appellate Practice* § 455(b) at 315; *see also Concerned Citizens to Save Roxbury v. Bd. of Envtl. Prot.,* 2011 ME 39, ¶ 17, 15 A.3d 1263.

III. Discussion

Pursuant to 22 M.R.S.A. § 3173, DHHS is "authorized to administer programs of aid, medical or remedial care and services for medically indigent persons." DHHS is required to operate a Medicaid program for disabled persons. *See* § 3174-G(1)(C) (providing that DHHS "shall provide for the delivery of federally approved Medicaid services to the following persons: A qualified elderly or disabled person when the person's family income is equal to or below 100% of the nonfarm income official poverty line . . . .") DHHS is also empowered "to make all

residual functional capacity and other factors that individual can make an adjustment to other work. § 416.920(a)(4)(v), (g), (h); § 414.960(c).

The Code of Federal Regulations provides that for the government to find that an applicant is not disabled at step five of the evaluation, the government is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors." § 404.1560(c)(2). An individual's residual functional capacity, as well as an individual's age, education, and work experience are taken into account as a part of step five. § 416.920(a)(4)(v); *see also* 20 C.F.R. § 416.912(f). The burden is on the Plaintiff to prove step four, and the burden shifts to the Department on step five. *See Wells v. Barnhart*, 267 F. Supp. 2d 138, 144 (D. Mass. 2003). The Hearing Officer proceeded through all five steps of the analysis. At the fifth step, the Hearing Officer determined that there were jobs in the national economy that Ms. Drouin would be capable of performing.

This appeal is a dispute over the fifth step of the analysis. The Hearing Officer's determinations regarding the other four steps are uncontested. Proceeding through those steps did not confirm that Ms. Drouin is either disabled or not disabled. Both parties agree that Ms. Drouin suffers from severe medical impairments, that she is unemployed, and that she can no longer perform the relevant work that she did in the past. Ms. Drouin contends that the Hearing Officer came to the wrong determination at step five, when the Hearing Officer relied upon the grid to determine that "Rebecca Drouin has residual functional capacity to perform other work that is available in significant numbers in the national economy." (Dec. at 9.) Ms. Drouin also contends that the Hearing Officer failed to show adequate deference to the medical evidence from Ms.

While the Hearing Officer stated that there was insufficient medical evidence to support Ms. Drouin's claim that she could not work because of her difficulty concentrating, the Hearing Officer failed to address the opinions offered by Ms. Drouin's primary care provider, Dr. Christopher Kitchens. *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources . . . We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.") Nor did the Hearing Officer address Ms. Drouin's fatigue, which was addressed by Dr. Kitchens in his fatigue questionnaire. (App. Ex. 1) The fatigue questionnaire completed by Dr. Kitchens provides that Ms. Drouin suffers from moderately severe fatigue, defined as "[a]n impairment which seriously affects ability to function." (App. Ex. 1.) He indicated that Ms. Drouin's fatigue frequently interferes with her "ability to maintain attention and concentration to sufficiently complete tasks in a timely manner." (*Id.*) He also indicated that her fatigue is consistent with her diagnosis and clinical findings, and that she needs to change her daily activities to avoid incapacitating fatigue. (*Id.*) Dr. Kitchens also indicated that he anticipates that Ms. Drouin would have to miss more than two days a month from work because of her impairments or treatment. (Id.) In addition, the "Rest Questionnaire" completed by Dr. Kitchens provides that Ms. Drouin requires one ten minute rest break per hour. (App. Ex. 2).

The court is aware from her closing statement, that Ms. Rodrigue discounted the value of Dr. Kitchens' questionnaires, because she felt that the questionnaires were not supported by the available medical evidence, however, the Hearing Officer failed to address the questionnaires entirely. It was an error for the Hearing Officer to fail to address the opinions supplied by Ms.

---

unemployment benefits, an individual generally must be able to work. *See* 26 M.R.S.A. § 1192(3). The court is unclear how Ms. Drouin's prior job search and collection of unemployment benefits is relevant to step five of the analysis, considering that the Department had already come to the conclusion that Ms. Drouin was incapable of performing her past relevant work, and Ms. Drouin was no longer collecting unemployment benefits.

7

When asked by her attorney whether she could handle a job that entailed mostly sitting for eight hours a day, Ms. Drouin responded that she did not think she would be able to do so. (*Id.* at 24:19-25:6.) She did not believe she would be able to go to work on a daily basis, and she did not believe she would be capable of handling a full time job. (*Id.* at 25:4-25:6.) Ms. Drouin also believed that the impact her liver disease has had on her focus and concentration would have an impact on her ability to perform a job. (*Id.* at 25-7-25-14.)

It does not appear from the Hearing Officer's Decision that she properly took into consideration Ms. Drouin's nonexertional limitations when she applied the grid. The Hearing Officer wrote, "The Department may meet its burden of proof at Step Five by referring to sections 20 C.F.R. §§ 404.1566(d); 416.969a, 'the grid.'" (Dec. at 8.) The Hearing Officer cited to *Heckler v. Campbell*, 461 U.S. 458 (1983) to support her argument that the Department was not compelled to provide a list of jobs that Ms. Drouin could perform, and the Department could rely solely upon the grid. However, the Hearing Officer failed to recognize that 20 C.F.R. pt. 404, subpt. P, App. 2 § 200.00(e)(2) provides that where individuals have both nonexertional limitations and strength limitations, and a finding of disability cannot be made based upon the rules in subpart P and the applicant's strength limitations alone, the rules provide a framework for consideration of how the applicant's nonexertional limitations decrease her work capability.[4]

---

Ms. Drouin: I don't know if its from drinking its just I don't – I can't – I have a hard time talking. My words – I know what is in my head but I can't – I forgot what was the question?
Ms. Boston: About memory. Do you have trouble remembering with your short term right?
Ms. Drouin: Yes. I have to write everything down. I write notes on the fridge.
(R. Ex. B. 20:11-22:7).

[4] 20 C.F.R. pt. 404, subpt. P, App. 2 § 200.00(e)(2) provides:

However, where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these

9

Accordingly, the court **ORDERS** that Respondent's Decision is VACATED. This case shall be remanded to DHHS, so that in conformance with this Order DHHS can perform anew step five of its analysis of whether the Petitioner qualifies as disabled. In this analysis, DHHS shall address the opinions provided by Petitioner's primary care physician and the impact of Petitioner's nonexertional limitations.

The clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 10/24/14

Hon. Mary Gay Kennedy
Justice, Superior Court

11

Action:  80C Appeal

REBECCA DROUIN                    VS.          COMMISSIONER, MAINE DEPT OF
                                                              HEALTH AND HUMAN SERVICES

Plaintiff's Attorney                                        Defendant's Attorney

Maureen Boston, Esq.                                  Thomas Quinn, Esq.
Pinetree Legal Assistance                            Asst. Attorney General
P.O. Box 398                                              6 State House Station
Lewiston, ME  04243                                   Augusta, ME  04333


Date of Entry

Oct 28          Received 10-28-13:
                    Petition for Review of Agency Action 80C filed.

Nov 7           Received 11-07-13:
                    Return mail receipt cards filed.
                    Attorney General Office and DHHS served on 10-28-13 through State Postal
                    Center.

Nov 18          Received 11-18-13:
                    Entry of Appearance of Thomas Quinn, AAG for Respondent.

Dec 11          Received 12-11-13:
                    Respondent's Certified Record filed.

Dec 11          On 12-11-13:
                    Notice of Briefing Schedule filed.
                    Appellant's brief is due on or before January 21, 2014.
                    Copies to counsel on 12-11-13.

Jan 21          Received 01-21-14:
                    Petitioner's Brief filed.

Feb 24          Received 02-24-14:
                    Respondent's Brief filed.

Mar 7           Received 03-07-14:
                    Petitioner's Reply Brief filed.

Apr 10          On 04-10-14:
                    Appeal set for hearing for May 7, 2014 at 9:30 a.m.


May 7           On 05-07-14: